## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SCOTT THORNTON,

      Plaintiff,

v.                                       No. CV 14-893 MCA/CG

GEO GROUP, INC., et al.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court upon Defendants GEO Group, Inc., Walter

Cooper, Dwayne Burris, L. Elizondo, Sergeant Felts, Warden Janecka, Deputy Warden

Beaird, Captain Condarco, I. Maldonado, Officer Gonzales, Recreational Director Felts,

and Sergeant Gomez's (the "GEO Defendants") *GEO Defendants' Martinez Report*,

(Doc. 34), filed September 3, 2015; Gregg Marcantel, Jerry Roark, and Ellen Gonzalez's

(the "NMCD Defendants") *Defendants' Martinez Report*, (Doc. 35), filed September 4,

2015; and *Keefe Commissary Sales' Motion for Summary Judgment Regarding Civil

Rights Violations*, (Doc. 37), filed October 16, 2015. Despite granting Plaintiff Scott

Thornton three extensions of the deadline to file and serve his response to the *Martinez*

Reports, he failed to do so and the deadline of January 4, 2016 has passed. (Docs. 36,

39, 43). Additionally, Plaintiff did not respond or ask for an extension to respond to

Defendant Keefe Commissary Sales' ("Keefe") Motion for Summary Judgment.

      The case was referred to this Court to make proposed findings of fact and

recommend a disposition by Chief United States District Judge M. Christina Armijo on

November 7, 2014. (Doc. 13). The Court has considered the Motions and the relevant

law. Because the Court finds that Plaintiff fails to show that a disputed material fact exists as to any of his claims, the Court will construe both *Martinez* Reports as Motions for Summary Judgment, and **RECOMMENDS** that all three Motions for Summary Judgment be **GRANTED** and the Complaint be **DISMISSED**.

## I.      Background

Plaintiff is a pro se litigant who was formerly a prisoner in the custody of the New Mexico Corrections Department ("NMCD"), who resided at the Lea County Correctional Facility ("LCCF") in Hobbs, New Mexico. (Doc. 11-1 at 3). Plaintiff filed his *Complaint for Declaratory/Injunctive Relief and Compensatory Damages* (the "Original Complaint") in the First Judicial District Court for the State of New Mexico ("state district court") on October 31, 2013. (Doc. 11-1). In the Original Complaint, Plaintiff brought suit against GEO Group, Inc. and several employees, including: Walter Cooper, Dwayne Burris, L. Elizondo, and Sergeant Felts (together the "GEO I Defendants"), as well as the NMCD and Gregg Marcantel (together the "NMCD I Defendants"), and Keefe. *Id.* Plaintiff alleged that the Defendants violated the New Mexico Tort Claims Act ("NMTCA"), his constitutional rights under 42 U.S.C. § 1983, and the Western Interstate Corrections Compact ("WICC").

Both the GEO I and NMCD I Defendants answered the lawsuit, but the state district court entered a default judgment against Defendant Keefe on August 7, 2014 for failure to answer the Original Complaint. (Doc 11-8 at 25-28). The GEO I Defendants moved for summary judgment on all of Plaintiff's claims against them, which the state district court granted in part on August 1, 2014, dismissing most of Plaintiff's claims. (Doc. 11-8 at 32-36). After the state court granted the motion for summary judgment,

the claims that remained against the GEO I Defendants include: (1) Plaintiff's claim against Defendants Cooper and Burris that they denied him legal access to the courts in violation of his due process and equal protection rights; (2) Plaintiff's claim against Defendants Elizondo and Cooper that the LCCF grievance policy and procedures violated Plaintiff's equal protection and due process rights; and (3) Plaintiff's state law tort claim under the NMTCA against Defendant Cooper for alleged deprivation of outdoor recreation. (Doc. 11-8 at 32-35). NMCD I Defendants did not move for summary judgment, so the two claims from the Original Complaint against the NMCD I Defendants remained, including: (1) Plaintiff's claim that the NMCD I Defendants created departmental policies designed to obstruct Plaintiff's constitutional right of access to the courts; and (2) Plaintiff's claim that Defendant Marcantel denied Plaintiff access to an inmate grievance procedure that complies with the due process clause of the First Amendment. (Doc. 11-1 at 4-5).

The state district court allowed Plaintiff to amend his Original Complaint and add more parties during a hearing on July 16, 2014. (Doc. 11-8 at 38). Plaintiff subsequently filed a *Supplemental Complaint* on September 19, 2014, adding eight new GEO Group, Inc. employees, James Janecka, Deputy Warden Beaird, Captain Condarco, Lieutenant Ply, Officer Gonzales, Sergeant Gomez, I. Maldonado, and Recreational Director Felts (together the "GEO II Defendants"),[1] as well as five NMCD employees, Ellen Gonzales, Sean Shannon, Jerry Roark, Larry Phillip, and Valerie Naegle (together the "NMCD II Defendants").  (Doc. 11-14 at 48-55). The claims against the new defendants included:

---

[1] Chief Judge Armijo dismissed Defendant Ply and the claims against him from the lawsuit as he never appeared in the lawsuit and Plaintiff did not reaffirm the claims against Defendant Ply in his *Reaffirmation of Certain Claims, Voluntary Withdrawal of Other Claims, and Request for Hearing on Unresolved Matters* ("Reaffirmation"), (Doc. 30). (Doc. 31 at 5-7).

(1) that Defendants Ellen Gonzales and Shannon failed to provide Plaintiff with legal assistance and access in violation of the Fourteenth Amendment; (2) that Defendants Condarco, Officer Gonzales, and Ply fabricated accusations against Plaintiff, segregated Plaintiff, and retaliated against Plaintiff in violation of his First, Eighth, and Fourteenth Amendment rights; (3) that Defendant Roark denied Plaintiff  access to an inmate grievance procedure; and (4) that Defendant Maldonado has not provided an appropriate accounting of all of the debits taken from Plaintiff's inmate account.

The NMCD II Defendants answered the Supplemental Complaint on October 2, 2014. (Doc. 11-15 at 25-32). The lawsuit was then removed to this Court by the GEO II Defendants on October 3, 2014, pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1). Plaintiff filed a motion to remand the case back to state district court, (Doc. 3 at 1); however, this Court filed a *Proposed Findings and Recommended Disposition*, (Doc. 19), finding that the case was properly removed, which Chief Judge Armijo formally adopted. (Doc. 31).

Defendant Keefe appeared in the case by filing an answer on October 24, 2014, after the case had been removed to this Court. (Doc. 6). Plaintiff filed an *Objection* to the entry of appearance by Defendant Keefe on November 10, 2014, (Doc. 16), and on February 19, 2015, Defendant Keefe filed its *Motion to Set Aside Default Judgment Against Keefe Commissary Sales* ("Motion to Set Aside Default"), (Doc. 29). Chief Judge Armijo granted the Motion to Set Aside Default because Plaintiff did not properly effectuate service. (Doc. 31). Plaintiff's claim against Defendant Keefe is that Defendant Keefe overly inflates the commissary prices. In her Order granting the Motion to Set Aside Default, Chief Judge Armijo additionally dismissed Plaintiff's claims against all

Defendants for declaratory and injunctive relief, because Plaintiff was transferred back to Oklahoma and is no longer in the custody of Defendants. (Doc. 31 at 4).

GEO Defendants[2] ask that the Court construe their *Martinez* Report as a motion for summary judgment. (Doc. 34 at 1). GEO Defendants assert that they are entitled to summary judgment on all claims and that Plaintiff has not stated a claim for relief against Defendants Janecka, Beaird, or Gomez. (Doc. 34). NMCD Defendants ask that the Court construe their *Martinez* Report as a Motion to Dismiss/Motion for Summary Judgment. (Doc. 35 at 2). NMCD Defendants state that Plaintiff has failed to state a claim for relief against the NMCD Defendants. Defendant Keefe filed a Motion for Summary Judgment. (Doc. 37). Defendant Keefe argues that there is no constitutional violation with regard to prison commissaries. (Doc. 37 at 1). Plaintiff did not file a response to either of the *Martinez* Reports or Defendant Keefe's Motion for Summary Judgment.

## II.    Standard of Review

The Court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.* A movant who does not bear the burden of persuasion at trial, such as Defendant, need not negate the nonmovant's

---

[2] Because the claims in the Original Complaint and Supplement Complaint against Defendants have been consolidated in the *Martinez* Reports, GEO I and GEO II Defendants will be referred to as GEO Defendants and NMCD I and NMCD II Defendants will be referred to as NMCD Defendants from here forward.

claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a movant only bears the burden of making a prima facie demonstration that there is no genuine issue of material fact, and may do so by pointing out a lack of evidence on an essential element of the nonmovant's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323, 325).

If the moving party has demonstrated an absence of material fact, then the "nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. *See Anderson*, 477 U.S. at 249. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995). To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See Adler*, 144 F.3d at 671.

The Court directed Defendants to compile and file a *Martinez* Report for the purpose of investigating the incidents underlying this lawsuit, and "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." (Doc. 32 at 3) (quoting *Hall*, 935 F.2d at 1109). "On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson,*

973 F.2d 1518, 1521 (10th Cir. 1992). A plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and is sworn under penalty of perjury. *Hall*, 935 F.2d at 1111.

The Court explained to the parties that the *Martinez* Report may be used in deciding whether to grant summary judgment, either upon a motion by one of the parties, or sua sponte. (Doc. 32 at 11). The parties were also urged to submit whatever arguments and materials they consider relevant to Plaintiff's claims in the *Martinez* Report, Response, and Reply. *Id.*

### III.    Undisputed Facts

The Court will deem the facts set forth in the *Martinez* Reports by GEO Defendants and NMCD Defendants and those set forth in the Motion for Summary Judgment by Defendant Keefe as undisputed, because Plaintiff did not file a response to the Motions. N.M. Ct. R. 7056-1(b) (All facts in movant's statement of facts that are properly supported shall be deemed admitted unless respondent specifically controverts them); Fed. R. Civ. P. 56(e) (The court may consider a fact undisputed if a party fails to properly address another party's assertion of fact as required by Rule 56(c)). The Tenth Circuit holds that a "*Martinez* [R]eport is treated like an affidavit, [but] the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)). Similarly, a pro se prisoner's complaint will be treated as an affidavit when sworn under penalty of perjury. *Id.*

Here, Plaintiff stated at the end of his Original Complaint, "I, Scott M. Thornton,

do hereby swear that the content of the foregoing Complaint is true and correct, and I so affirm this Declaration by my signature as specifically approved by NMRA Rule 1-011." (Doc. 11-1 at 13). This statement does not; however, conform to NMRA Rule 1-011 or 28 U.S.C. § 1764, which both require statements to be made "under penalty of perjury." Therefore, Plaintiff's Original Complaint cannot be used as an affidavit to support Plaintiff's factual allegations. *Id.* Plaintiff does not make any affirmation or swear under penalty of perjury in his Supplemental Complaint; therefore, the Supplemental Complaint cannot be used as an affidavit either. As a result, Defendants' facts will be considered undisputed.

**IV.    Analysis**

Plaintiff brings suit under 42 U.S.C. §1983, alleging that Defendants violated his First, Eighth, and Fourteenth Amendment rights, as well as his rights under the NMTCA. Specifically, Plaintiff claims that Defendants (1) failed to provide access to the Court; (2) enacted grievance policies and procedures that violated Plaintiff's constitutional rights; (3) retaliated against Plaintiff; (4) did not appropriately account for Plaintiff's debts; (5) arbitrarily inflated commissary prices; and (6) deprived Plaintiff of outdoor recreation. GEO Defendants and NMCD Defendants each filed *Martinez* Reports and moved for summary judgment. Both argue that Plaintiff failed to demonstrate that a genuine issue of material fact exists as to the Constitutional and state law claims. Additionally, Defendant Keefe filed a Motion for Summary Judgment arguing that the Plaintiff's claim against Keefe has no basis in fact or law. The Court will now review each claim in turn.

A.  *Failure to Provide Access to the Court*

Plaintiff alleges that GEO Defendants Cooper and Burris and NMCD Defendant

Marcantel denied Plaintiff legal access. Specifically, Plaintiff maintains that Defendants (1) use threats of disciplinary action when inmates assist or seek assistance from fellow inmates on legal issues; (2) deny legal photocopies; (3) delay photocopies; (4) force inmates to relinquish original pleadings, causing censorship; (5) deny access to the prison law library without an appointment; (6) deny adequate law library and research time; (7) deny the use of typewriters to draft legal documents; (8) misplace legal materials in the prison facility mail system; (9) delay accessibility to department policies; and (10) create departmental policies to obstruct access to the courts. GEO and NMCD Defendants respond that Plaintiff has failed to demonstrate any constitutional violations.

Prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *overruled in part by Lewis v. Casey*, 518 U.S. 343 (1996). This right does not, however, "guarantee inmates the wherewithal to transform themselves into litigation engines." *Casey*, 518 U.S. at 354. "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. A prison must specifically protect an inmate's ability to prepare a petition or complaint. *Wolff v. McDonald*, 418 U.S. 539, 576 (1974). In order to establish that a prison has violated an inmate's right of access to the court, the inmate must show an "actual injury," by "demonstrat[ing] that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Casey*, 518 U.S. at 349, 351.

### 1. Legal Access by GEO Defendants

Plaintiff makes nine claims against the GEO Defendants, including that GEO Defendants: (1) use threats of disciplinary action when inmates assist or seek assistance from fellow inmates on legal issues; (2) deny legal photocopies; (3) delay photocopies; (4) force inmates to relinquish original pleadings, enabling censorship; (5) deny access to the prison law library without an appointment; (6) deny adequate law library and research time; (7) deny the use of typewriters to draft legal documents; (8) misplace legal materials within the prison facility mail system; and (9) delay accessibility to department policies. (Doc. 11-1 at 6-7). Plaintiff claims that GEO Defendants Cooper and Burris interpret the prison's legal access policy in a way that infringes and obstructs Plaintiff's right to access the courts.[3] (Doc. 11-1 at 6). GEO Defendants move for summary judgment on the basis that Plaintiff cannot prove an actual injury or a constitutional violation of his rights. (Doc. 34 at 10-20).

### a. Use of Threats and Disciplinary Action

Plaintiff alleges that Defendants Cooper and Burris threatened disciplinary action when Plaintiff assisted or sought assistance from other inmates on legal matters. (Doc. 11-1 at 6). Defendants move for summary judgment on this claim.

GEO Defendants enforce the legal access policies and procedures as provided to them by NMCD. (Doc. 34 Ex. A; Ex. G at ¶¶ 1.0, 6.0; Ex. H at ¶ 4.1; Ex. I). These policies specifically prohibit inmates from assisting other inmates with legal matters. (Doc. 34 Ex. A; Ex. J). The Supreme Court has held that prisons may place restrictions

---

[3] In his Reaffirmation, Plaintiff specifically states that "he is not contesting the constitutionality of NMCD's legal access program, . . . but rather the manner in which Defendants fail to comply with such policy requirements . . ." (Doc. 30 at 3-4). Therefore, the Court will not address whether or not the Defendants' policy is Constitutional, but rather, whether Plaintiff was provided sufficient access to the court.

on prisoners for giving or receiving help on legal matters, so long as the prison provides alternative assistance for inmates. *Johnson v. Avery*, 393 U.S. 483, 490 (1969).

At LCCF, the prison maintains an ERC that is available to inmates on a daily basis, as well as legal materials and a person trained in the law to assist in filing initial pleadings. (Doc. 34 Ex. A; Ex. J). Given the alternative legal assistance in the forms of an individual and materials provided to LCCF inmates, the prison did not violate Plaintiff's rights by not allowing inmates to give or receive help with legal matters. Additionally, there are no facts on the record to show that Plaintiff was ever threatened or disciplined for helping or receiving help from other inmates. (Doc. 34 at 9). Because Plaintiff cannot show that he suffered an actual injury due to this policy, Defendants are entitled to summary judgment.

### b.  Legal Copies

Plaintiff states that he was denied legal photocopying or the photocopying he requested was delayed up to twelve days. (Doc. 11-1 at 6). Plaintiff also claims that Defendants forced inmates to give up copies of original legal materials. (Doc. 11-1 at 6). Defendants move for summary judgment on these claims.

GEO Defendant Burris handled Plaintiff's photocopying requests, and Defendant Burris was required to comply with NMCD's policies and procedures. (Doc. 34 Ex. A; Ex. J; Ex. K). The evidence shows that Plaintiff did have his photocopy requests denied or delayed on occasion. For example, NMCD's legal access monitor, Mr. Vince Wiggins, told Defendant Burris that he could not make copies for inmates with cases pending outside of New Mexico. (Doc. 34 Ex. A). Defendant Burris followed the directions of Mr. Wiggins until 2014, when Defendant Shannon replaced Mr. Wiggins and allowed

Defendant Burris to make photocopies of legal materials for out of state litigation. (Doc. 34 Ex. A).

On July 10, 2014, Plaintiff requested photocopies, but did not attach the actual photocopies to the request. (Doc. 34 Ex. A; Ex. B). On July 11 2014, Defendant Burris denied the request for photocopies because Plaintiff had not attached copies of the papers, as was required per NMCD policy. (Doc. 34 Ex. A; Ex. B). Defendant Burris followed up with Plaintiff about the copies on July 19, 2014. (Doc. 34 Ex. A; Ex. B). Plaintiff then filed an informal complaint based on the denial of his photocopies on July 22, 2014, stating that he was going to miss a filing deadline due to the denial. (Doc. 34 Ex. F). Plaintiff notified Defendant Burris that he was going to miss his court filing deadline on July 25, 2014. (Doc. 34 Ex. A; Ex. B). On July 28, 2014, Plaintiff gave Defendant Burris the documents to be copied, as per policy, and the copies were processed. (Doc. 34 Ex. A; Ex. B). Plaintiff did not provide any evidence that Defendants took copies of original documents other than to photocopy those documents.

Although the evidence shows that Plaintiff's photocopies were delayed or denied on several occasions, Plaintiff must show actual injury to make a claim for denial of meaningful access to the courts. Plaintiff has not presented any evidence of actual injury due to the denial or delay of photocopies; consequently, Defendants are entitled to summary judgment on this claim.

      *c.  ERC Access*

Plaintiff contends that he was denied access to the ERC without an appointment and was denied adequate time for legal research. (Doc. 11-1 at 6). Defendants again

move for summary judgment on this claim.

Although the ERC is open daily for inmate use, Plaintiff was housed in protective custody while at LCCF, so his visits to ERC were limited to Saturdays from 9:00 a.m. to 11:00 a.m., by appointment. (Doc. 34 Ex. A). NMCD's policy requires inmates who want to visit the ERC to submit an Inmate Request for Legal Access Form. (Doc. 34 Ex. A; Ex. J). The facility's designated staff member, Defendant Burris, then reviews the request and has six working days to respond to the request. (Doc. 34 Ex. A; Ex. J). The evidence shows that each time Plaintiff made a request, he was given an appointment. (Doc. 34 Ex. A; Ex. B). On a few occasions, Plaintiff's appointments were cancelled due to facility lockdowns, pod restrictions, or staff unavailability. (Doc. 34 Ex. A; Ex. B).

Institutions have a constitutional obligation to provide inmates access to the court; however, this obligation does not require inmates to have unlimited access to a law library or give inmates "the right to select the method by which access will be provided." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (citations omitted). In cases where a prison restricts access to legal resources, the Court "must determine whether the prison's policy is reasonably related to legitimate penological interests." *Id.* at 1403-04 (quoting *Petrick v. Maynard*, 11 F.3d 991, 994-95 (10th Cir. 1993)). Given that Plaintiff was held in protective custody and could not access the ERC with the general population, the restriction on the access to the law library was not unreasonable or constitutionally impermissible. *Id.* at 1404. Moreover, Plaintiff cannot show an actual injury that occurred due to the GEO Defendants' regulations. Accordingly, Defendants are entitled to summary judgment based on the ERC access claims.

### d. Denying the Use of a Typewriter

Plaintiff argues that he was denied access to a typewriter despite his WICC entitlement and medical need. (Doc. 11-1 at 6-7). Defendants move for summary judgment on the claim.

NMCD policy prohibits the use of typewriters and word processors by inmates. (Doc. 34 Ex. A; Ex. J). Plaintiff makes an equal protection argument based on the fact that a different inmate housed at LCCF was able to use a typewriter. (Doc. 34 Ex. A; Ex. D). Prisoners are not a suspect class and thus a prison rule does not have to be rationally related to a legitimate penological interest for an equal protection challenge. *Williams v. Sebek*, No. 08-2307, 299 Fed. Appx. 104, 106 (3d Cir. Nov. 17, 2008) (unpublished) (citing *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)). The inmate who used a typewriter at LCCF had a court order from the United States District Court for the District of Arizona directing New Mexico prison officials to allow him to use a typewriter based on medical need. (Doc. 34 Ex. A; Ex. D). There is no evidence in the record that shows Plaintiff had a medical need for a typewriter. (Doc. 34 Ex. A). The GEO Defendants' granting of permission to use a typewriter for one inmate while denying Plaintiff did not violate Plaintiff's rights.

In general, inmates do not have a federally protected right to use typewriters, "the reason being that pro se prisoner's causes are not prejudiced by the filing of handwritten briefs." *Twyman v. Crisp*, 584 F.2d 352, 357-58 (10th Cir. 1978). Moreover, Plaintiff was able to submit hundreds of pages of handwritten documents to this Court. Thus, Plaintiff cannot show that the denial of the use of a typewriter caused him any actual injury, so Defendants are entitled to summary judgment.

e. *Loss of Legal Material in the Prison Mail System and Delaying Access to Department Policies*

Plaintiff accuses GEO Defendants of losing material in the prison mail system and delaying access to department policies. There is no evidence in the record to support these claims, nor is there evidence that shows Plaintiff's court action was affected by these allegations. Defendants are entitled to summary judgment on this claim.

2. *Legal Access by NMCD Defendants*

Plaintiff alleges that NMCD Defendants Marcantel and Gonzales deprived him of his right to access the court by failing to provide him with legal materials from Oklahoma. (Doc. 11-1 at 6; Doc. 11-14 at 35, 37). Defendants move for summary judgment on this claim.

Defendant Gonzales informed Plaintiff's caseworker that he had to contact Oklahoma authorities for Oklahoma legal materials. (Doc. 35 Ex. 1). Defendant Shannon informed GEO Defendant Burris of this same policy. (Doc. 35 Ex. 2; Ex. 6). "In the context of denial of access claims, the general rule imposes upon the sending state authorities the responsibility for ensuring their prisoners incarcerated in sister state facilities are afforded access to state courts." *Clayton v. Tansy*, 26 F.3d 980, 982 (10th Cir. 1993). It follows that, the sending state, not the receiving state bears the burden of providing state legal material. *Id.* In this case, Oklahoma is the sending state, so Oklahoma and not New Mexico bears the burden of providing state legal materials. Again, Plaintiff has not provided evidence that shows his legal access to the courts was burdened by defendants. The NMCD Defendants are entitled to summary judgment on this claim.

15

In sum, as for the nine claims alleged by Plaintiff in regard to legal access, the Court recommends granting summary judgment for each claim because Plaintiff has not shown that the Defendants violated his right of access to the courts.

B. *Grievance Policy*

Plaintiff alleges that GEO Defendant Elizondo (1) failed to investigate grievances or failed to investigate them within the time period prescribed by policy, and (2) failed to maintain the confidentiality of the grievance process. (Doc. 11-1 at 7). Plaintiff also alleges that Defendant Elizondo retaliated against Plaintiff for filing grievances, which will be addressed below in Section C. Additionally, Plaintiff states that GEO Defendant Cooper violated his First Amendment rights by "rubber-stamp[ing] [Defendant Cooper's] approval of Defendant Elizondo's decisions." (Doc. 11-1 at 7-8). Against NMCD Defendants, Plaintiff claims that Defendant Marcantel delegates his authority in the grievance process and "allows for the systemic denial of the vast majority of grievance appeals." (Doc. 11-1 at 8). Finally, Plaintiff accuses NMCD Defendant Roark of not understanding the problems at LCCF. (Doc. 11-14 at 38-39).

1. *Failure to Investigate*

In his Original and Supplemental Complaints, Plaintiff makes several claims against GEO Defendant Elizondo with regard to failing to investigate Plaintiff's grievances. Plaintiff first makes a general claim that no effort is made to resolve informal complaints and alleges that Defendant Elizondo fails to investigate grievances, answers grievances addressed to Defendant Janecka, manipulates dates for receipt of grievances, rejects grievances without any support, and fails to process grievances. (Docs. 11-1 at 7-8; Doc. 11-14 39-40). Defendants state that Plaintiff's claims do not

give rise to a Fourteenth Amendment due process claim.

"[T]here is no independent constitutional right to state administrative grievance procedures." *Von Hallcy v. Clements*, No. 12-1381, 519 Fed. Appx. 521, 523 (10th Cir. Mar. 27, 2013) (unpublished) (quoting *Boyd v. Werholtz*, No. 10-3284, 443 Fed. Appx. 331, 332 (10th Cir. Oct. 3, 2011) (unpublished)). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Id.* Therefore, Plaintiff's due process claim based on allegations of an ineffective grievance system fails as a matter of law and Defendants are entitled to summary judgment. *Id.*

### 2. Failure to Maintain Confidentiality

Plaintiff claims that GEO Defendant Elizondo also breached his duty of confidentiality through the grievance process by discussing grievances with other staff members and in the presence of other inmates and by opening an investigation to question why Plaintiff had medical records in his possession, which Plaintiff claims was a violation of the Health Insurance Portability and Accountability Act ("HIPAA"). (Doc. 11-1 at 7). Defendants argue that they are entitled to summary judgment because Plaintiff has not stated a cognizable claim.

In his Supplemental Complaint, Plaintiff alleges that the grievance policy violated his right to confidentiality and specifically lists two grievance numbers, 14-02-12 and 14-02-06. (Doc. 11-14 at 40). Defendants attached both grievances to their *Martinez* Report. (Doc. 34 Ex. T-4). In grievance 14-02-12, Plaintiff complains that nurses at LCCF falsified his medical logs, but does not make a complaint about a violation of confidentiality. In grievance 14-02-06, Plaintiff states that Defendant Elizondo violated

his confidentiality rights under the grievance procedure and HIPAA by turning Plaintiff's medical records over to Defendant Beaird. (Doc. 34 Ex. T-4 at 5).

The NMCD grievance procedure does contain a confidentiality clause. (Doc. 34 Ex. V). Although it is not clear that Defendant Elizondo violated the clause, given that Plaintiff attached his medical records to the grievance, failure to follow prison grievance procedures itself does not raise a violation of a federal constitutional right. *Sims v. Miller*, Nos. 00-1210, 00-1202, 5 Fed. Appx. 825, 828 (10th Cir. Feb. 28, 2001) (unpublished). As to the allegations of a HIPAA violation, "HIPPA does not create a private right of action for alleged disclosures of confidential information." *Thompson v. Larned State Hosp.*, No. 14-3103, 597 Fed. Appx. 548, 550 n.1 (10th Cir. March 3, 2015) (unpublished) (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010)). Because HIPAA does not create a private right or cause of action for enforcement, Plaintiff cannot state a claim for relief based upon its violation. As a result, Defendants are entitled to summary judgment on this cause of action.

### 3.  *First Amendment Violation and Delegation of Authority*

Plaintiff alleges that GEO Defendant Cooper violated Plaintiff's First Amendment rights by "rubberstamp[ing] [Defendant Cooper's] approval of Defendant Elizondo's decisions." (Doc. 11-1 at 7-8). Additionally, Plaintiff claims that NMCD Defendant Marcantel delegates his authority in the grievance process and allows for systematic denials of grievances. GEO and NMCD Defendants argue that Plaintiff's claims cannot prevail as a matter of law and ask for summary judgment.

Similar to Plaintiff's access to the courts claims, "[a] plaintiff must show an actual injury to a non-frivolous legal claim to prevail on a claim that his First Amendment right

18

of access to the courts was violated by the violation of internal prison grievance procedures." *Losee v. Gallegos*, No. 2:11-cv-00080-TC, 2014 WL 1338576, at *12 (D. Utah. Apr. 3, 2014) (unpublished) (citing *Esnault v. Burnett*, No. 03-1153, 83 Fed. Appx. 279, 282 (10th Cir. Dec. 11, 2003) (unpublished)). This is due to the fact that prison officials cannot be held liable under § 1983 for "denying or failing to act on grievances[,]" but can be held liable for "frustrating a prisoner's First Amendment right to access the courts." *Id.* (quoting *Barnett v. Luttrell*, No. 08-6432, 414 Fed. Appx. 784, 787 (6th Cir. Mar. 10, 2011) (unpublished)). However, an inmate's right to access the courts "is not compromised by the prison's refusal to entertain his grievance." *Boyd v. Werholtz*, No. 10-3284, 443 Fed. Appx. 331, 332 (10th Cir. Oct. 3, 2011) (unpublished); *Flick v. Alba* 392 F.2d 728, 729 (8th Cir. 1991).

Plaintiff has not shown that Defendant Cooper's "rubberstamp[ing]" of complaints or Defendant Marcantel's actions interfered with his right to access the courts. Plaintiff was able to submit complaints through the prison's grievance system and has brought these complaints to this Court. Because Plaintiff cannot show that Defendants interfered with his ability to access the courts, Defendants are entitled to summary judgment on this claim.

### 4. Misunderstanding Problems at LCCF

In his Supplemental Complaint, Plaintiff states that in response to a grievance, "[NMCD Defendant] Roark's designee stated: 'it is your responsibility to find another staff member to copy your material . . . .' It is apparent this person has no concept of the near segregated status of GP-1 inmates at LCCF . . . ." (Doc. 11-14 at 38-39). Defendants ask for summary judgment on this claim.

19

Since Defendant Roark is able to make final decisions on inmate grievances, the Court understands this claim to mean that Defendant Roark denied Plaintiff his constitutional grievance procedure. (Doc. 35 Ex. 3). However, as explained fully above, there is no constitutional right to a grievance procedure. Plaintiff cannot assert a due process claim based on this statement, thus Defendants are entitled to summary judgment.

### C. *Retaliation*

In his Supplemental Complaint, Plaintiff alleges that GEO Defendants Condarco, and Gonazales[4] fabricated accusations against Plaintiff and segregated Plaintiff in retaliation for filing the present lawsuit and naming Defendant Elizondo as a defendant. (Doc. 11-14 at 37-38). It appears that Plaintiff claims the retaliatory acts constituted a violation of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights. Plaintiff also claims that GEO Defendant Elizondo retaliated against Plaintiff for Plaintiff possessing his own medical records. Defendants contend that there is no evidentiary support for Plaintiff's claims.

On October 28, 2013, GEO Defendant Gonzales was assigned to Housing Unit 4, C-Pod and was responsible for performing the inmate count. (Doc. 34 Ex. AA). Defendant Gonzales performed the count twice, after which she was informed that the count was one inmate short. (Doc. 34 Ex Y; Ex. AA). On the third inmate count, Defendant Gonzales saw Plaintiff. (Doc. 34 Ex Y; Ex. AA). Defendant Gonzales believed that Plaintiff hid himself from Defendant during the inmate count in order to interfere with the count. (Doc. 34 Ex Y; Ex. AA). Defendant Gonzales filed an Inmate

---

[4] Plaintiff also names Lieutenant Ply in this claim; however, Chief Judge Armijo dismissed Ply and the claims against him from the lawsuit in a previous opinion. (Doc. 31 at 5-7).

Misconduct Report about Plaintiff based on the incident. (Doc. 34 Ex. Y; Ex. AA).

Because an interference with the inmate count is considered a serious infraction, GEO

Defendant Condarco ordered that Plaintiff be placed in prehearing detention, also

referred to as segregation. (Doc. 34 Ex. W; Ex. X). Plaintiff remained in segregation for

approximately two days, from October 28, 2013 to October 30, 2013. (Doc. 34 Ex. W;

Ex. X; Ex. Y). Plaintiff alleges that he was placed in segregation for retaliatory reasons

because Plaintiff pursued grievances against Defendant Elizondo, not due to the inmate

count infraction.

### 1. *First Amendment Retaliation Claim*

Plaintiff claims that he was retaliated against by GEO Defendants for filing this

lawsuit. Prison officials cannot harass or retaliate against inmates for the inmate's

exercise of his First Amendment right to access the courts. *Smith v. Maschner*, 899

F.3d 940, 947-48 (10th Cir. 1990). In order to establish a First Amendment retaliation

claim, the following elements must be shown: (1) that the plaintiff was engaged in a

constitutionally protected activity; (2) defendant's actions caused injury to plaintiff that

would chill a person of ordinary firmness from continuing to engage in the activity; and

(3) the adverse action was substantially motivated as a response to the plaintiff's

exercise of constitutionally protected conduct. *Shero v. City of Grove, Okla*., 510 F.3d

1196, 1203-04 (10th Cir. 2007). Given that "an inmate is not inoculated from the normal

conditions of confinement experienced by convicted felons  . . . merely because he has

engaged in protected activity[,] . . . a plaintiff must prove that but for the retaliatory

motive, the incidents to which he refers, including the disciplinary action, would not have

taken place."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal

quotations marks omitted) (quoting *Smith*, 899 F.3d at 949-50).

Here, Plaintiff fails to present evidence that the Defendants' alleged retaliatory motives were the "but for" cause of Defendants' actions. *Peterson*, 149 F.3d at 1144. Plaintiff filed the present lawsuit on October 31, 2013, which was three days after he was issued an Inmate Misconduct Report, on October 28, 2013. Defendants could not have retaliated against Plaintiff for filing a lawsuit prior to Plaintiff actually filing the lawsuit. To the extent that Plaintiff is also accusing the Defendants of retaliation for grievances filed through the prison grievance process, he has not shown any evidence that his use of the grievance process was the "but for" cause of Defendants placing him in segregation. Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

### 2.  *Eighth Amendment Cruel and Unusual Punishment Claim*

Plaintiff alleges that Defendants "inflict[ed] an unjust punishment" on Plaintiff by placing him in segregation. (Doc. 11-14 at 38). Plaintiff additionally describes the punishment as "disproportionate" and "a punishment that cannot be considered a normal aspect of prison life." (Doc. 11-14 at 38). The Court construes Plaintiff's allegations as a claim that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.[5]

Placing inmates in segregation "falls within a prison official's broad administrative and discretionary authority to manage and control the prison institution." *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)). So long as a punishment does not "involve the wanton and unnecessary

---

[5] The Court construes pro se litigants' pleadings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1994).

infliction of pain" or is not "grossly disproportionate to the severity of the crime warranting imprisonment[,]" the punishment will not violate the Eighth Amendment. *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Here, Plaintiff has not alleged any facts that by being placed in segregation for two days, he suffered wanton or unnecessary pain or disproportionately severe treatment for having committed a count infraction. Therefore, Defendants are entitled to summary judgment.

### 3. Fourteenth Amendment Due Process Claim

The Court also interprets Plaintiff to have alleged a Fourteenth Amendment due process claim from being placed in segregation. The due process clause only gives inmates a "narrow range of protected liberty interests." *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quoting *Hewitt*, 459 U.S. at 466). Transfer to a more restrictive environment "is the sort of confinement that a lawfully incarcerated individual should anticipate receiving in the course of serving his sentence[;]" therefore, "[c]lassification of the plaintiff into administrative segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause." *Id.* (quoting *Bailey*, 828 F.2d at 652.)

In order to show a deprivation of a liberty interest, the inmate must show that a prison condition poses a significant hardship on the inmate "in relation to the ordinary incidents of prison life." *Schmitt v. Rice*, No. 10-3269, 421 Fed. Appx. 858, 861 (10th Cir. Apr. 27, 2011) (unpublished) (quoting *Trujillo v. Williams*, 465 F.3d 2010, 1225 (10th Cir. 2006)). In making this determination, the Court should consider whether the condition: (1) furthers a legitimate penological interest; (2) the conditions are extreme; (3) the placement in prehearing detention increases the duration of confinement; and (4)

the placement is indeterminate. *Id.* (quoting *Estate of DiMarco v. Wyoming Dep't of Corrections, Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007)). Plaintiff does not support his allegations with any evidence that his time in prehearing detention was atypical or caused him significant hardship; consequently, Defendants are entitled to summary judgment.

### 4. Retaliation by Defendant Elizondo

Plaintiff additionally claims that Defendant Elizondo retaliated against him for using the prison grievance process. (Doc. 11-1 at 7). Other than making a general claim that Defendant Elizondo "routinely harasses or intimidates Plaintiff," (Doc. 11-1 at 7), Plaintiff does not provide any facts to support his allegation; therefore, Defendant is entitled to summary judgment on this claim.

### D. Accounting of Debts

In his Supplemental Complaint, Plaintiff alleges that GEO Defendant Maldonado excessively debited Plaintiff's account when collecting money for photocopies and mailing. (Doc. 11-14 at 39). Plaintiff states that in his first months at LCCF, each photocopy request and mailing was debited individually, but then Defendant switched to "bundling" debts so that Plaintiff could not track his account. (Doc. 11-14 at 39). Defendants ask for summary judgment on the basis that Plaintiff's claim fails as a matter of law.

NMCD policy allows inmates a credit of up to $300 for legal photocopies, notary services, and legal postage. (Doc. 34 Ex. K). When credit is issued, an inmate's account is placed on hold; subsequently, once funds are available, outstanding charges are deducted and the hold is lifted. (Doc. 34 Ex. K; Ex. CC). When multiple charges were

outstanding on Plaintiff's account, they would be deducted in a lump sum. (Doc. 34 Ex. CC).

Inmates do not automatically have a protected property interest in the money that is deposited into their prison accounts. *Gist v. Anderson*, 2013 WL 6909470, at \*4 (W.D. Okla. Dec. 30, 2013) (unpublished) (citing *Steffey v. Orman*, 461 F.3d 1218, 1221-23 (10th Cir. 2006); *Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010)). Property interests "are created and their dimensions defined by existing rules or understandings that stem for an independent source such as state law." *Id.* (quoting *Bd. Of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Then, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Id.* (internal quotations omitted) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)).

For prisoners, the Supreme Court has held that a deprivation of a prisoner's protected liberty interest occurs if a deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Tenth Circuit extended this test to claims of a deprivation of prisoner's protected property interest in their prison accounts. *Id.* (citing *Clark*, 625 F.3d at 691). Accordingly, Plaintiff must show that the bundling of his funds created an "atypical and significant hardship," so that he was deprived of a protected liberty interest. The Court concludes that Plaintiff does not have a protected property interest in a particular form of accounting on his prison account. Plaintiff has not presented evidence for the proposition that bundling debits is an "atypical and significant hardship" that subjected him to conditions different from those ordinarily

experienced by inmates serving sentences. Therefore, Defendants are entitled to summary judgment.

### E. *Inflated Commissary Prices*

In Plaintiff's Original Complaint, he argues that Keefe inflates their commissary Prices. (Doc. 11-1 at 11) He specifically alleges that on October 1, 2013 and going forward, Keefe increased prices by 12 to 13%. (Doc. 11-1 at 11). Defendant argues that there are no genuine issues of material fact and the law is settled that there is no civil rights claim to a commissary.

Keefe provides commissary management services to LCCF. (Doc. 37 Ex. A). The commissary contract was awarded to Keefe based on a request for a proposal/bid with a price sheet for goods sold at the commissary and the contract was awarded to Keefe based on that proposal. (Doc. 37 Ex. A). Once LCCF accepted the proposal; the commissary prices were fixed and could only be changed with the approval of the prison or by revision of the contract. (Doc. 37 Ex. A).

To state a claim under 42 U.S.C. § 1983 Plaintiff must allege that he was deprived of a right "secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Klein v. Chester*, No. CIV-12-33-HE, 2012 WL 1371408, at *1 (W.D. Okla. Feb. 24, 2012) (unpublished) (quoting *Ameri. Mfrs. Mut. Ins. Co. v. Sullivan*, 532 U.S. 40, 49-50 (1999)). The Tenth Circuit has held that, access to a prison commissary is not a right, but a privilege; consequently, Plaintiff cannot state a cognizable claim for relief under § 1983. *Id.* (citing *Rodriguez v. Gen. Counsel for Fed. Bureau of Prisons*, No. 08-1364, 315 Fed. Appx. 79, 80 (10th Cir. Feb. 27, 2009) (unpublished)). Therefore, Defendants are entitled to

summary judgment.

    *F. Deprivation of Outdoor Recreation*

    Plaintiff states that GEO Defendant Cooper knowingly denied him outdoor recreation. (Doc. 11-1 at 8). The Court construes this count as a civil claim for negligence brought pursuant to the NMTCA. Defendant moves for summary judgment on the claim.

    NMCD policy governs recreation for inmates. (Doc. 34 Ex. M). Access to recreation areas can be restricted due to threats to facility security, including when the facility is on lockdown or pod restrictions. (Doc. 34 Ex. M). Access to recreation areas can also be denied due to insufficient staff available to monitor the recreation areas. (Doc. 34 Ex. M). Recreation was denied on some days between March 2012 and March 2014 due to state-mandated lockdowns and staffing shortages. (Doc. 34 Ex. M; Ex. O). However, between April 2013 to October 2013, inmates were given access to recreation areas on 140 days out of approximately 183 days. (Doc. 34 Ex. M; Ex. O).

    A federal court may exercise supplemental jurisdiction over state law claims, but only if those claims are related to a claim over which the court possesses original jurisdiction. 28 U.S.C. § 1367. Since a court must have original jurisdiction in order to exercise supplemental jurisdiction, dismissal of the federal claims in a case precludes the Court from exercising supplemental jurisdiction over the related state law claim. *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1166-67 (10th Cir. 2004). Thus, in this case, jurisdiction over the state law claim would be lacking because only the federal claims purport to invoke the original jurisdiction of this Court, and the Court has recommended that those claims be dismissed.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988). The Court finds no reason why this case would depart from "the usual case." Although the claim was properly before the Court at the time the Complaint was filed, the Court has recommended dismissal of all of Plaintiff's federal claims and therefore should decline to exercise jurisdiction over the remaining pendent state law claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right"). Therefore, the Court recommends that Plaintiff's deprivation of outdoor recreation claim be dismissed without prejudice.

G. <u>No Claim for Relief Stated Against Certain Defendants</u>

Plaintiff named GEO Defendants Janecka, Beaird, Sergeant Felts, Recreational Director Felts, and Gomez in his Supplemental Complaint. Although Plaintiff  makes reference to these five Defendants in the Supplemental Complaint, he does not make any claims against them. Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Because Plaintiff has failed to state a claim for relief against Defendants Janecka, Beaird, Sergeant Felts, Recreational Director Felts,

and Gomez, the Court recommends that those Defendants be dismissed as parties.

## V.   Conclusion

For the reasons stated above, the Court **RECOMMENDS** that:

    a. *GEO Defendants' Martinez Report*, (Doc. 34), be construed as a Motion for Summary Judgment and be **GRANTED** in favor of GEO Defendants;

    b. NMCD *Defendants' Martinez Report*, (Doc. 35), be construed as a Motion for Summary Judgment and be **GRANTED**  in favor of NMCD Defendants;

    c. *Keefe Commissary Sales' Motion for Summary Judgment Regarding Civil Rights Violations*, (Doc. 37), be **GRANTED** in favor of Keefe;

    d. Plaintiff's Access to the Courts claim against Defendants be **DISMISSED WITH PREJUDICE**;

    e. Plaintiff's grievance claim against Defendants be **DISMISSED WITH PREJUDICE**;

    f. Plaintiff's retaliation claim against Defendants be **DISMISSED WITH PREJUDICE**;

    g. Plaintiff's accounting claim against Defendants be **DISMISSED WITH PREJUDICE**;

    h. Plaintiff's commissary claim against Defendants be **DISMISSED WITH PREJUDICE**;

    i. Plaintiff's negligence claim against Defendants be **DISMISSED WITHOUT PREJUDICE**; and

    j. Defendants Janecka, Beaird, Sergeant Felts, Recreational Director Felts, and Gomez be **DISMISSED WITH PREJUDICE** from this action, and ;

    k. All other relief requested by Plaintiff be **DENIED**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE